**In re GULF NORTHERN TRANSPORT, INC. et al., Debtors.**

**Nos. 00–9224–3F7 to 00–9227–3F7.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Feb. 4, 2003.

John B. MacDonald, for the trustee.

Patrick P. Coll, Jacksonville, FL, for the Subpoenaed Parties.

### ORDER ASSESSING SANCTIONS AGAINST THE SUBPOENAED PARTIES

JERRY A. FUNK, Bankruptcy Judge.

These cases came before the Court upon the Trustee's Billing Statement and the Response to Trustee's Billing Statement filed by Danny L. Pixler, W. Anthony Huff, Judson B. Wagenseller, Huff Timber Company, Inc., the Huff Grandchildren Trust, Sebrite Insurance Services, and Logistic Management Resources, Inc., formerly known as U.S. Trucking, Inc., (collectively the "Subpoenaed Parties"). The factual background is as follows.

On September 20, 2001 the Court entered Order Granting Trustee's Motion to Compel Discovery. The Court directed the Subpoenaed Parties to produce certain documents on October 1 and October 2, 2001 in compliance with subpoenas served on them on June 26, 2001 (the "Subpoenas"). On September 28, 2001 the Subpoenaed Parties filed Non–Parties' Motion to Reconsider and Vacate Order Granting Trustee's Motion to Compel Discovery (the "Motion to Reconsider").

On October 22, 2001 the Trustee filed Motion for Contempt for Failure to Comply with Subpoenas Pursuant to Federal Bankruptcy Rule 9016(e) (the "Motion for Contempt") and Motion to Transfer Venue Pursuant to 28 U.S.C. § 1412 (the "Motion to Transfer") in the Bankruptcy Court for the Western District of Kentucky. On October 24, 2001 the Kentucky Bankruptcy Court entered an order transferring venue to this Court. On October 30, 2001 the Trustee filed Notice of Transfer of Proceedings Pursuant to 28 U.S.C. § 1412 (the "Notice of Transfer") in this Court.

On November 6, 2001 the Court conducted a hearing on the Motion to Reconsider at which it expressed concern as to the Subpoenaed Parties' prolonged delay in complying with the Subpoenas. On November 21, 2001 the Court entered an order (the "November 21, 2001 Order") directing the Subpoenaed Parties to produce at the location specified in the Subpoenas the documents to which no objection was asserted in the Subpoenaed Parties' response at such date and time as the Trustee and the Subpoenaed Parties should mutually agree, but in no event later than December 14, 2001.

On December 4, 2001 the Trustee, the Trustee's counsel, and the Trustee's financial consultant traveled to Louisville, Kentucky and appeared at the location specified in the Subpoenas. None of the documents requested by the Subpoenas was produced or made available for review.

On December 6, 2001 the Trustee filed Motion for Sanctions for Failure to Comply with Court Ordered Discovery and for Other Equitable Relief (the "Motion for Sanctions"). On January 9, 2002 the Court conducted a hearing on the Motion for Sanctions. On January 30, 2002 the Court entered Order Granting Trustee's Motion for Sanctions for Failure to Comply with Order Dated November 21, 2001 (the "Sanctions Order"). The Sanctions Order provided:

The Subpoenaed Parties failed to cooperate to permit the Trustee to inspect

the documents to which no objection had been asserted at the locations specified in the Subpoenas.

Although the Subpoenaed Parties produced copies of certain documents through counsel, only selected documents responsive to the Subpoenas were produced by December 14, 2001 [in Jacksonville, Florida]. Additional documents were produced after that date through counsel [in Jacksonville, Florida]. The documents ultimately produced by the Subpoenaed Parties were not so voluminous that they could not have been timely produced. The Subpoenaed Parties' 1) failure to cooperate to permit the Trustee to inspect the documents to which no objection had been asserted at the location specified in the Subpoenas and 2) failure to produce all documents by December 14, 2001 evidence a conscious pattern of delay and are a violation of the November 21 Order.

The Court imposed sanctions in the amount of $25,824.36 jointly and severally against the Subpoenaed Parties.

On February 11, 2002 the Subpoenaed Parties filed a Notice of Appeal of the Sanctions Order to the district court. The two issues on appeal were: 1) whether this Court abused its discretion in granting the Trustee's Motion for Sanctions by finding that the Subpoenaed Parties violated the November 21, 2001 Order and 2) whether this Court abused its discretion in imposing sanctions against the Subpoenaed Parties in the amount of $25,824.36.

On November 6, 2002 the District Court entered an order in which it affirmed in part and vacated in part the Sanctions Order. The District Court affirmed this Court's finding that the Subpoenaed Parties failed to comply with the November 21, 2001 Order. Additionally, the District Court affirmed this Court's implicit finding that the Subpoenaed Parties' conduct in failing to comply with the November 21, 2001 Order constituted bad faith. However, the District Court vacated the Sanctions Order as to the amount of sanctions and remanded the case to this Court for further consideration and findings concerning that issue.

The District Court noted that this Court awarded the entire amount sought by the Trustee without an explanation of how it determined that such an amount was appropriate. The District Court also noted that the Trustee submitted a spreadsheet purporting to set forth the total number of hours and rates charged by various persons as well as travel expenses and miscellaneous costs incurred in conjunction with the Trustee's unsuccessful attempts to obtain discovery under the subpoenas. However, the District Court pointed out that the Trustee failed to set forth the specific tasks performed by each person, the date such tasks were performed and the number of hours devoted to each specific task. Finally, the District Court noted that this Court did not make any specific findings concerning the trip to Kentucky, where the production of certain documents was to take place, or the fees and costs associated with it.

On November 20, 2002 the Court entered an order directing the Trustee to prepare and file within twenty days a detailed project billing statement concerning his attempts to obtain discovery under the subpoenas. The billing statement was to set forth the specific tasks performed by each person, the date such tasks were performed and the number of hours devoted to each specific task. The order also directed the Subpoenaed Parties to file a response no later than twenty days thereafter.

The Trustee seeks $29,860.00 in fees and $2,332.36 in costs in connection with the

issuance and enforcement of the subpoenas.[1]

The Subpoenaed Parties object to the following fees and costs sought by the Trustee: 1) fees incurred prior to the service and return date of the Subpoenas, 2) fees incurred reviewing documents, 3) fees unrelated to the Subpoenas, 4) fees related to the Motion for Contempt and Motion to Transfer filed with the Bankruptcy Court for the Western District of Kentucky and the Notice of Transfer filed with this Court and 5) fees and costs related to the trip to Kentucky.[2]

Upon review of the Trustee's Billing Statement and the Subpoenaed Parties' response thereto, the Court imposes sanctions against the Subpoenaed Parties in the amount of $24,890.86, comprised of $22,558.50 in fees and $2,332.36 in costs. The following constitute the Court's findings and explanation of how it arrived at the amount of sanctions. The Court will address each objection in turn.[3]

## I. Time Prior to Service and Return Date of Subpoenas

The Subpoenaed Parties object to the fees and expenses incurred prior to the service and return date of the Subpoenas on the basis that they would have been incurred whether there was a discovery violation or not. Only fees and expenses actually caused by a discovery violation are assessable as a sanction therefor. *See Tollett v. City of Kemah,* 285 F.3d 357 (5th Cir. March 6, 2002) ("Obviously, the fees incurred for the underlying discovery requests were not caused by any failure to comply. Discovery dispute or no, those fees would have been incurred.") The Subpoenas were served on June 26, 2001 with a return date of July 17, 2001. The Court will not include the $1,822.00 representing the fees and costs incurred in connection with preparing, issuing, and serving the Subpoenas and the $1,030.00 representing the fees associated with the time expended on or before July 17, 2001 in the sanctions award because they were not caused by the discovery violation.[4]

## II. Time Spent Reviewing Documents

The Subpoenaed Parties contend that the fees associated with reviewing the documents produced by Judson Wagenseller and discussing such production with the Trustee should be excluded from the award of sanctions. As with the time expended prior to the service and return date of the subpoenas, the discovery violation did not cause the Trustee to incur fees to review the documents. Stated another way, the Trustee would have incurred fees to review the documents whether there was a discovery violation or not. Accord-

---

1. The Trustee sought $23,510.00 in fees and $2,332.36 in costs when he filed the Motion for Sanctions. The Trustee now seeks an additional $6,350.00 in fees incurred between December 6, 2001, the date of the filing of the Motion for Sanctions, and January 17, 2002.

2. The Subpoenaed Parties did not object to the reasonableness of the hourly rates charged by the Trustee's counsel. Notwithstanding the absence of such an objection, the Court independently reviewed the hourly rates and finds them to be reasonable.

3. The Court will discuss the portion of the Trustee's fees it will disallow. The remainder

constitutes the amount of sanctions to be imposed against the Subpoenaed Parties.

4. The $1,822.00 is calculated by adding the entries beginning with the June 12, 2001 entry on page 3 of the Trustee's billing statement and ending with the June 25, 2001 $98.00 entry on page 4 of the Trustee's billing statement. The $1,030.00 is calculated by adding the entries beginning with the July 9, 2001 entry on page 4 of the Trustee's billing statement and ending with the July 17, 2001 entry on page 4 of the Trustee's billing statement.

ingly the Court will not include the $1,446.50 in fees incurred in connection with the review and discussion of production of documents by Judson Wagenseller in the sanctions award.[5]

### III. Fees Unrelated to Subpoenas

■ The Court will not include the $210.50 in fees reflected in the following entries in the award of sanctions because they are unrelated to the subpoenas at issue:

| | | |
|---|---|---|
| 8/10/01 | JBM | $46.00 (Page 4) |
| 8/23/01 | JBM | $23.00 (Page 5) |
| 8/30/01 | JBM | $69.00 (Page 5) |
| 10/3/01 | PPP | $72.50 (Page 6) |

The entries for August 10, 23, and 30, 2001 relate to a subpoena issued to John Ragland, who is not one of the Subpoenaed Parties. Additionally, the Court cannot discern a connection between the entry on October 3, 2001 for "Research 506C Requirements for Phoenix Advisors (.5)" and the enforcement of the Subpoenas.[6]

### IV. Fees Related to Motion for Contempt and Motion to Transfer filed with the Bankruptcy Court for the Western District of Kentucky and Notice of Transfer filed with this Court

The Subpoenaed Parties contend that the time spent preparing the Motion for Contempt and the Motion to Transfer filed with the Bankruptcy Court for the Western District of Kentucky and the Notice of Transfer filed with this Court should not be included in the award of sanctions. The Court will separately address the fees associated with each pleading.

#### a. Motion for Contempt

■ The Subpoenaed Parties argue that the Motion for Contempt is virtually identical to the Motion to Compel Discovery filed with this Court on September 13, 2001. They point out that the inclusion of the fees associated with the preparation of the Motion for Contempt in the calculation of an award of sanctions would amount to "double counting" because the fees associated with the preparation of the Motion to Compel Discovery have already been included. A review of the motions indicates that the Motion for Contempt is virtually identical to the Motion to Compel Discovery. Accordingly, the Court will not include the $1,039.00 in fees associated with the preparation of the Motion for Contempt in the calculation of an award of sanctions.[7]

---

5. The $1,446.50 is calculated by adding the following entries:

| | | | |
|---|---|---|---|
| 9/20/01 JBM | 1.1 hrs | $253.00 (Page 6) |
| 11/20/01 JBM | 0.7 hrs | $161.00 (Page 9) |
| 11/26/01 JBM | 1.5 hrs | $345.00 (Page 9) |
| 11/28/01 JBM | 1.0 hrs | $230.00 (Page 9) |
| 11/29/01 JBM | 1.8 hrs | $414.00 (Page 9) |
| 12/4/01 PPP | 0.3 hrs | $ 43.50 (Page 10) |

6. The Subpoenaed Parties also urge the Court not to include the fees reflected in the 10/25/01 entry by DMC in the amount of $40.00 on page 3 of the Trustee's Billing Statement and the 10/26/01 entry by DMC in the amount of $20.00 on page 3 of the Trustee's Billing Statement. The Subpoenaed Parties contend that the entries relate to communications between DMC and Scott Zoppoth,

Sebrite Insurance Services' corporate agent, concerning Sebrite's corporate status. As Sebrite is one of the Subpoenaed Parties, the Court sees no reason not to include these fees in the award of sanctions.

7. The following entries represent the fees associated with the preparation of the Motion for Contempt:

| | | | |
|---|---|---|---|
| 10/09/01 JBM | 0.2 hrs | $ 46.00 (Page 6) |
| 10/9/01 PPP | 2.0 hrs | $290.00 (Page 6) |
| 10/10/01 PPP | 1.75 hrs | $253.75 (Page 7) |
| 10/12/01 JSM | 0.5 hrs | $ 45.00 (Page 7) |
| 10/17/01 JBM | 0.4 hrs | $ 92.00 (Page 7) |
| 10/18/01 JBM | .7 hrs | $166.00 (Page 7) |
| 10/18/01 PPP | .65 hrs | $ 94.25 (Page 7) |
| 10/19/01 JBM | 0.1 hrs | $ 23.00 (Page 7) |
| 10/19/01 PPP | 0.2 hrs | $ 29.00 (Page 8) |

#### b. *Motion to Transfer and Notice of Transfer*

■ The Subpoenaed Parties contend that the fees associated with the Motion to Transfer and the Notice of Transfer are the result of a strategic decision by the Trustee rather than the Subpoenaed Parties' conduct. The Court finds this argument unavailing. The practice of law is replete with strategy. Although the Trustee may have sought transfer of the proceedings from the Kentucky Bankruptcy Court to this Court for strategic reasons, the proceedings themselves were necessitated by the Subpoenaed Parties' failure to produce the documents being sought. That the Trustee employed one strategy over another does not absolve the Subpoenaed Parties of their liability in the matter. The Court will therefore not disallow any portion of the fees associated with the Motion to Transfer and Notice of Transfer.

### V. *Fees and Costs Related to Trip to Kentucky*

■ The Subpoenaed Parties argue that the fees and costs associated with the trip to Kentucky should not be included in an award of sanctions because the Trustee, his counsel, and his financial consultant traveled to Kentucky despite the absence of an agreement between counsel for the Subpoenaed Parties and counsel for the Trustee as to the production of documents on December 4 and December 5, 2001. The District Court made the following findings:

> After a hearing on November 6, 2001, during which the Bankruptcy Court advised the parties of the contents of the Order it later entered on November 21, 2001 counsel for [the Subpoenaed Parties] and [the Trustee] attempted to arrive at a mutually agreeable date to produce documents to which no objection had been asserted. [The Subpoenaed Parties] rejected proposed dates in November, and counsel then determined that counsel were available on December 4 and December 5. At this time counsel for [the Subpoenaed Parties] advised counsel for [the Trustee] that he would have to confirm these dates for [the Subpoenaed Parties].

> On November 21, 2001 counsel for [the Subpoenaed Parties and the Trustee] conducted a telephone conference to discuss categories of documents that would be produced under the subpoenas. During this conversation counsel for [the Subpoenaed Parties] relayed [the Subpoenaed Parties]' proposal that they make copies of responsive documents available for inspection in Jacksonville, Florida instead of in Louisville, Kentucky. Counsel for [the Trustee] rejected this proposal and insisted that production occur in Louisville, Kentucky as required by the subpoenas.

> That same date [the Subpoenaed Parties]' counsel also advised counsel for [the Trustee] that he had not yet confirmed the dates of December 4 and 5 with [the Subpoenaed Parties]. [The Trustee]'s counsel reiterated that as they had previously discussed, these dates were the only dates that counsel for both parties were available before the December 14 deadline.

> Apparently no further communications occurred between the parties until November 29, 2001, when counsel for [the Trustee] faxed a letter dated November 28, 2001, to counsel for [the Subpoenaed Parties] purporting to confirm their agreement to produce documents in Louisville, Kentucky on December 4 and 5. That same day [the Subpoenaed Parties]' counsel advised [the Trustee]'s counsel that [the Subpoenaed Parties] had not confirmed the December 4 and 5 dates and therefore no agreement had been reached regarding the date for compliance with the subpoenas.

Counsel for [the Subpoenaed Parties] informed counsel for [the Trustee] that [the Subpoenaed Parties] were not in a position to produce the documents on December 4 or 5 and that [the Subpoenaed Parties] intended to comply with the Bankruptcy Court's November 21, 2001 Order by producing documents on or before December 14.

During another telephone conference on December 3, 2001, counsel for [the Trustee] advised counsel for [the Subpoenaed Parties] that he intended to travel to Louisville, Kentucky to review documents responsive to the subpoenas. Counsel for [the Subpoenaed Parties] reiterated [the Subpoenaed Parties]' proposal that they copy documents and make them available for review in Jacksonville, Florida, and indicated that counsel for [the Trustee]'s trip to Louisville 'will not be the best use of your time', 'may not be worthwhile', or words to that effect.

At the hearing on the Motion for Sanctions before the Bankruptcy Court on January 9, 2002 counsel for [the Trustee] asserted that he did not understand counsel for [the Subpoenaed Parties] to have stated unequivocally at any time that [the Subpoenaed Parties] would not produce any documents responsive to the subpoenas in Louisville, Kentucky, on December 4 and 5, or that [the Subpoenaed Parties] had proposed any other alternative dates for production there before the December 14, 2001 deadline. Counsel for [the Subpoenaed Parties] disputed this understanding and asserted it was clear on December 3, 2001 that there was no mutual agreement between the parties for production of documents in Louisville, Kentucky on December 4 and 5. The Bankruptcy Court did not make any specific factual findings with regard to the dispute between the parties as to what exactly was said during the conversations leading up to counsel for [the Trustee]'s trip to Kentucky on December 4, 2001.

Although the Court finds there was no mutual agreement between the parties as to the production of documents in Louisville, Kentucky on December 4 and December 5, 2001, the Court places the blame for the parties' failure to reach such an agreement squarely upon the Subpoenaed Parties. The Court finds that the Subpoenaed Parties' conduct evidences no attempt to reach a mutual agreement with the Trustee to produce the documents on or before December 14, 2001. The Subpoenaed Parties did not propose any alternative dates for production before the December 14, 2001 deadline. Additionally, the Court does not find that the Trustee or his counsel understood that the Subpoenaed Parties would not produce any documents responsive to the subpoenas on December 4 and December 5, 2001 in Louisville, Kentucky. Cryptic phrases by counsel for the Subpoenaed Parties to the effect that a trip to Louisville "will not be the best use of your time" or "may not be worthwhile" did not put the Trustee or his counsel on notice that the Subpoenaed Parties did not intend to produce any documents on December 4 and December 5, 2001. Accordingly, the Court finds that: 1) to the extent that the trip to Kentucky was unnecessary, it was unnecessary because of the Subpoenaed Parties' continued intransigence and refusal to cooperate with the Trustee and 2) at the time they traveled to Kentucky, the Trustee and his counsel were not aware that the trip would be a complete waste of their time. Accordingly, the Court will not exclude any portion of the fees or costs associated with the trip to Kentucky from the award of sanctions.

## VI. *Fees Incurred Between December 6, 2001 and January 17, 2002*

■ Finally, the Trustee seeks an additional $6,350.00 in fees incurred between

December 6, 2001, the date of the filing of the Motion for Sanctions, and January 17, 2002. The Court will disallow $1,753.50, the portion of the fees relating to document review, because the Trustee would have incurred fees to review the documents whether there was a discovery violation or not.[8] Upon the foregoing, it is

**ORDERED:**

1. The Court imposes sanctions against the Subpoenaed Parties in the amount of $24,890.86, which amount shall be taxed jointly and severally.

2. The Subpoenaed Parties shall pay $24,890.86 directly to the Trustee within fifteen days of the date of this Order.

8. The following entries represent the fees associated with such document review:

| | | | |
|---|---|---|---|
| 12/27/01 JBM | 1.6 hrs | $368.00 (Page 12) |
| 12/27/01 JSM | 1.5 hrs | $135.00 (Page 12) |
| 12/27/01 PPP | 2.0 hrs | $290.00 (Page 12) |
| 1/07/02 JBM | .9 hrs | $207.00 (Page 13) |
| 1/08/01 JBM | 1.7 hrs | $391.00 (Page 13) |
| 1/08/02 PPP | 1.5 hrs | $217.50 (Page 13) |
| 1/10/02 PPP | 1.0 hrs | $145.00 (Page 13) |